UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER: 11-20358-CR-UNGARO(s) |
| v. | |
| CARLOS ARNOLDO LOBO, a/k/a "Negro" | AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION |

I, Kurt K. Lunkenheimer, being duly sworn, hereby depose and state:

1.  I am a citizen of the United States of America and a resident of Florida.

2.  I graduated from the Duke University School of Law in May 2003 and was subsequently admitted to the State Bar of New York in April of 2004.

3.  From September 2010, until the present, I have been employed as an Assistant United States Attorney in the Southern District of Florida. As an Assistant United States Attorney, my duties are to prosecute persons charged with criminal violations of the laws of the United States. I am currently assigned to the Narcotics Section in the Criminal Division of the United States Attorney's Office in the Southern District of Florida. I have personally participated in numerous cases involving violations of federal criminal laws. Based upon my training and experience, I am an expert in the criminal laws and procedures of this district and of the United States. During my tenure in the United States Attorney's Office I have become particularly knowledgeable in the area of criminal law relating to violations of the federal controlled substances statues.

4.  In the course of my duties, I have become familiar with the charges and evidence in the case against CARLOS ARNOLDO LOBO, alias Negro, alias Arnaldo Lobo, entitled United States of America vs. CARLOS ARNOLDO LOBO, Case Number 11-20358-CR-

1

UNGARO(s), which arose out of an investigation of a drug trafficking organization which conspired to import cocaine from Colombia, to the United States, by way of Central America.

## THE CHARGES AND PERTINENT UNITED STATES LAW

5.    Under the laws of the United States, a criminal prosecution may be commenced by a grand jury on its own decision to return and file an indictment with the clerk of the United States District Court. A grand jury is composed of not less than 16 people whom the United States District Court selects at random from the residents of that district. The grand jury is an independent body empanelled by the court. The purpose of the grand jury is to examine the evidence of crimes presented to it by United States law enforcement authorities. After independently reviewing this evidence, each member of the grand jury must determine if there is probable cause to believe that a crime has been committed and that the particular defendant or defendants committed the crime. After at least 12 grand jurors affirmatively vote that there is probable cause to believe that the defendant committed the crime or crimes, the grand jury may return an indictment. An indictment is a document that formally charges the defendant with a crime or crimes, describes the specific laws that the defendant is accused of violating, and describes the acts of the defendant that are alleged to be violations of the law.

6.    After the grand jury returns the indictment, a warrant for the defendant's arrest is issued at the direction of a United States District Judge or Magistrate Judge; the court must issue an arrest warrant for each defendant charged in the indictment. The arrest warrant may be signed by a judge or the clerk of the court. Under United States law, the arrest warrant is

simply a document authorizing a law enforcement officer to take physical custody of a defendant and bring him to court to answer the charges contained in the indictment.

7. A grand jury may also return a superseding indictment, which amends the accusations.

8. On November 7, 2013, a federal grand jury sitting in the Southern District of Florida returned and filed a Superseding Indictment against LOBO charging him with the following felony offenses: In Count One, with conspiracy to distribute cocaine knowing it would be imported into the United States, in violation of Title 21, United States Code, Sections 963 and 959(a)(2); and in Count Two with conspiracy to possess with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States, in violations of Title 46, United States Code, Sections 70506(b) and 70503(a). Cocaine is a controlled substance, pursuant to Title 21, United States Code, Section 812.

9. Based on the charges in the Superseding Indictment, on November 7, 2013, the United States District Court for the Southern District of Florida issued a warrant for the arrest of LOBO. This warrant remains valid and executable to apprehend LOBO to stand trial for the crimes with which he is charged in the Superseding Indictment.

10. It is the practice of the United States District Court for the Southern District of Florida to retain the original indictment and arrest warrant and to file them with the records of the court. Therefore, I have obtained certified copies of the Superseding Indictment and arrest warrant from the Clerk of the Court and have attached them to this affidavit as **Exhibit A** and **Exhibit B**, respectively. Please note that the signature of the foreperson of the grand jury has been redacted from the Superseding Indictment pursuant to the rules of the United States District Court for the Southern District of Florida for purposes of public safety.

11. The relevant portions of the statutes cited above are attached to this affidavit as **Exhibit C**. Each of these statutes was duly enacted and in force at the time the offenses were committed and at the time the Superseding Indictment was returned. These statutes remain in full force and effect. A violation of any of these statutes constitutes a felony under the laws of the United States.

12. Counts 1 and 2 of the Superseding Indictment allege that LOBO engaged in a conspiracy. Under United States law, a conspiracy is simply an agreement to violate another criminal statute—in the case of Count 1, the law prohibiting the distribution of cocaine, knowing it would be imported into the United States, and in Count 2, the law prohibiting possession with the intent to distribute cocaine, while on board a vessel subject to the jurisdiction of the United States. In other words, under United States law the act of combining and agreeing with one or more persons to violate United States law is a crime in and of itself. Such an agreement need not be formal, and may simply be a verbal understanding. A conspiracy is deemed to be a partnership for criminal purposes, in which each member or participant becomes the agent or partner of every other member. A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other conspirators. So, if a defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict him of conspiracy, even if he had not participated before and even if he played only a minor part. Similarly, a defendant need not be aware of all of the acts of his co-conspirators in order to be held liable for these acts, provided that he is a knowing member of the conspiracy, and the acts of the co-conspirators were foreseeable and within the scope of the conspiracy.

13. Regarding the felony conspiracy charged in Count 1, the United States must show that LOBO came to an agreement with one or more other persons to accomplish a common and unlawful plan, namely to distribute controlled substances, knowing that the controlled substances would be imported into the United States, and that LOBO knowingly and willfully became a member of such conspiracy. The maximum penalty for violations of Title 21, United States Code, Sections 963and 959(a)(2), as charged in Count 1, is a term of life imprisonment.

14. Regarding the felony conspiracy charged in Count 2, the United States must show that LOBO came to an agreement with one or more other persons to accomplish a common and unlawful plan, namely to possess with the intent to distribute controlled substances while on board a vessel subject to the jurisdiction of the United States, and that LOBO knowingly and willfully became a member of such conspiracy. The maximum penalty for violations of Title 46, United States Code, Sections 70506(b) and 70503(a), as charged in Count 2, is a term of life imprisonment.

15. I have also included as part of **Exhibit C** the text of Title 18, United States Code, Section 3282, which is the statute of limitations for the crimes charged in the Superseding Indictment. The statute of limitations requires that a defendant be formally charged within five years of the date on which the offense or offenses were committed. Once an indictment has been filed in a federal district court, as in the case against LOBO, the statute of limitations is tolled and no longer runs. This prevents a criminal defendant from escaping justice by simply hiding out and remaining a fugitive for an extended period of time. In addition, under the law of the United States, the statute of limitations for a

5

continuing offense, such as conspiracy, begins to run upon the conclusion or completion of the offense, not upon the date it commenced.

16. I have thoroughly reviewed the applicable statute of limitations, and the prosecution of the charges in this case is not barred by the statute of limitations. Since the applicable statute of limitations is five years, and the Superseding Indictment, which charges criminal violations occurring between January 2009 and continuing through the date the Superseding Indictment was filed on November 7, 2013, LOBO was formally charged within the specified five-year time period.

17. The Superseding Indictment also includes forfeiture allegations against LOBO pursuant to Title 21, United States Code, Section 853. Forfeiture is a consequence of a conviction on the charges alleged in the Superseding Indictment and is not a charge in itself. The forfeiture allegations are included in the Superseding Indictment mainly to give the defendant notice of the forfeiture provisions. The relevant portions of the forfeiture statutes are included in **Exhibit C**.

18. The United States will prove its case against LOBO through the testimony of cooperating witnesses and law enforcement agents, and through physical evidence.

19. LOBO has not been tried or convicted for the offenses charged in the Superseding Indictment, nor has he been ordered to serve any sentence in connection with this case.

## SUMMARY OF THE FACTS

20. An investigation by U.S. law enforcement authorities revealed a large-scale drug trafficking organization operating near La Ceiba, Honduras. Information received from confidential sources and other evidence indicates that LOBO and his co-conspirators smuggle large shipments of cocaine on fishing vessels he owns from Panama to Honduras,

then into Guatemala, for ultimate delivery through Mexico to the United States.  On August

3, 2010, the United States Coast Guard (USCG) received permission from the Government

of Honduras to board a Honduran-flagged fishing vessel that had been observed in

international waters off the northeast coast of Honduras.  Approximately 2,500 kilograms

of cocaine was seized.  One of the crew members told law enforcement authorities that

LOBO had provided the fishing vessel and identified a photograph of LOBO.

21.    On December 16, 2010, the USCG interdicted a go-fast vessel without nationality

approximately 100 nautical miles north of Colon, Panama, and seized approximately 1,500

kilograms of cocaine.  One of the crew members told investigators that he was recruited by

a person he knew to be employed by LOBO.  He  also informed U.S. law enforcement

authorities that in one instance in 2009, he received approximately $100,000 dollars in

United States currency from LOBO and transported the currency to Panama.  He said that

he had participated in approximately eight drug shipments while working for LOBO and

identified a photograph of LOBO.

22.    On June 9, 2012, United States law enforcement authorities lawfully interdicted a go-fast

vessel without nationality approximately 83 nautical miles southwest of Cartagena,

Colombia, and seized approximately 500 kilograms of cocaine.  One of the crew members

told U.S. law enforcement authorities that he was recruited to participate in the cocaine

shipment by an associate of LOBO.

23.    On October 12, 2012, United States law enforcement authorities lawfully interdicted a go-

fast vessel without nationality approximately 60 nautical miles northeast of Bluefields,

Nicaragua, and seized approximately 720 kilograms of cocaine.  The three crew members

from the go-fast vessel were transported to Miami, Florida, for prosecution.  One of the

crew members told U.S. law enforcement authorities that he was hired to transport cocaine on a vessel and would be paid approximately $20,000 dollars in United States currency for the trip and that he was recruited by an associate of LOBO and identified a photograph of LOBO.

24. I have attached to this affidavit, as **Exhibit D,** the original affidavit of Karel Matyska, Special Agent for the Department of Homeland Security Investigations.  In his affidavit, Special Agent Matyska summarized the investigation into the drug trafficking of LOBO and the evidence that resulted in the Superseding Indictment in this case.

## IDENTIFICATION

25. CARLOS ARNOLDO LOBO, alias Negro, alias Arnaldo Lobo, is a Honduran citizen, born on May 28, 1974, in Honduras.  He is described as a Hispanic male standing approximately 5 feet 10 inches in height, weighing approximately 175 pounds with brown hair and brown eyes.

26. A photograph of LOBO is attached to Special Agent Matyska's affidavit and made part of this extradition request.  Cooperating defendants have identified this photograph as LOBO.

//

//

//

//

//

//

//

## CONCLUSION

27.   This affidavit and the affidavit of Special Agent Karel Matyska each were sworn to before

a United States Magistrate Judge for the Southern District of Florida, who is a person

authorized to administer an oath for this purpose.

_____

KURT K. LUNKENHEIMER
ASSISTANT UNITED STATES ATTORNEY

Sworn and subscribed to before me
this 31 day of March, 2014.

_____

HON.  JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

## EXHIBITS

**Exhibit A**:    Certified copy of Superseding Indictment

**Exhibit B**:    Certified copy of arrest warrant

**Exhibit C**:    Relevant statutes

**Exhibit D**:    Affidavit of HSI Special Agent Karel Matyska

           **Attachment 1**: Photograph of CARLOS ARNOLDO LOBO

FILED by ____ TB   D.C.
ELECTRONIC

NOV   07, 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.O. OF FLA. MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 11-20358-CR-UNGARO(s)

21 U.S.C. § 963
46 U.S.C. § 70506(b)
21 U.S.C. § 853

UNITED STATES OF AMERICA

vs.

CARLOS ARNOLDO LOBO,
    a/k/a "Negro,"
and
JUVING ALEXANDER SUAZO PERALTA,
    a/k/a "Alex Juvinee Suazo,"
    a/k/a "Alex,"
    a/k/a "Chancleta,"
    a/k/a "Diego,"

    Defendants.

_____/

### SUPERSEDING INDICTMENT

The Grand Jury charges that:

### COUNT 1

Beginning at least as early as in and around January 2009, the exact date being unknown to the Grand Jury, and continuing through the date of the return of this Superseding Indictment, in the countries of Honduras, Costa Rica, Panama, Colombia, and elsewhere, the defendants,

CARLOS ARNOLDO LOBO,
a/k/a "Negro,"
and
JUVING ALEXANDER SUAZO PERALTA,
a/k/a "Alex Juvinee Suazo,"
a/k/a "Alex,"
a/k/a "Chancleta,"
a/k/a "Diego,"



Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By _____
               Deputy Clerk
Date 2/5/14

Case 1:11-cr-20358-UU   Document 8   Entered on FLSD Docket 11/08/2013   Page 2 of 6

did knowingly and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, to distribute a Schedule II controlled substance, knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a)(2); all in violation of Title 21, United States Code, Section 963.

Pursuant to Title 21, United States Code, Section 960(b)(1)(B), it is further alleged that this violation involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine.

## COUNT 2

Beginning at least as early as in and around January 2009, the exact date being unknown to the Grand Jury, and continuing through the date of the return of this Superseding Indictment, in the countries of Honduras, Costa Rica, Panama, Colombia, and elsewhere, the defendants,

**CARLOS ARNOLDO LOBO,**
a/k/a "Negro,"
**and**
**JUVING ALEXANDER SUAZO PERALTA,**
a/k/a "Alex Juvinee Suazo,"
a/k/a "Alex,"
a/k/a "Chancleta,"
a/k/a "Diego,"

did knowingly and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury and with known persons on board a vessel subject to the jurisdiction of the United States, to possess with intent to distribute a controlled substance, in violation of Title 46, United States Code, Section 70503(a); all in violation of Title 46, United States Code, Section 70506(b).

2

Pursuant to Title 46, United States Code, Section 70506(a) and Title 21, United States Code, Section 960(b)(1)(B), it is further alleged that this violation involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine.

## CRIMINAL FORFEITURE

a.      The allegations of this Superseding Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

b.      Upon conviction of any of the violations alleged in this Superseding Indictment, the defendants shall forfeit to the United States any property constituting or derived from any proceeds which the defendants obtained, directly or indirectly, as the result of such violations, and any property which the defendants used or intended to be used in any manner or part to commit or to facilitate the commission of such violation.

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY

DUSTIN M. DAVIS
ASSISTANT UNITED STATES ATTORNEY

3

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO. __11-20358-CR-UNGARO(s)__

vs.

**CERTIFICATE OF TRIAL ATTORNEY***

CARLOS ARNOLDO LOBO
and
JUVING ALEXANDER SUAZO PERALTA,

Defendants.

_____/

**Superseding Case Information:**

Court Division: (Select One)

New Defendant(s)     Yes __X__ No _____
Number of New Defendants __1__
Total number of counts __2__

__X__ Miami _____ Key West
_____ FTL       _____ WPB _____ FTP _____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)        Yes
   List language and/or dialect    Spanish

4. This case will take __7-9__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                        (Check only one)

   I     0 to 5 days       _____           Petty    _____
   II    6 to 10 days      __X__           Minor    _____
   III   11 to 20 days     _____           Misdem.  _____
   IV    21 to 60 days     _____           Felony   _____
   V     61 days and over  _____

6. Has this case been previously filed in this District Court? (Yes or No) __No__     If yes:
   Judge: __Ungaro__                 Case No. __11-20358-CR-Ungaro__
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) __No__            If yes:
   Magistrate Case No.: _____
   Related Miscellaneous number: _____
   Defendant(s) in federal custody as of: _____
   Defendant(s) in state custody as of: _____
   Rule 20 from the District of: _____
   Is this a potential death penalty case? (Yes or No) __No__

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

DUSTIN M. DAVIS
ASSISTANT UNITED STATES ATTORNEY
COURT ID NO. A5501193

*Penalty Sheet(s) attached

REV 4/8/08

4 of 6

Case 1:11-cr-20358-UU   Document 8   Entered on FLSD Docket 11/08/2013   Page 5 of 6

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: CARLOS ARNOLDO LOBO**

Case No:  11-20358-CR-UNGARO(s)

Count #: 1

Conspiracy to Distribute Cocaine Knowing it Would be Imported into the United States

Title 21, United States Code, Section 963

**\*Max. Penalty:**      Life Imprisonment

Count #: 2

Conspiracy to Possess with Intent to Distribute Cocaine On Board a Vessel Subject to the Jurisdiction of the United States

Title 46, United States Code, Section 70506(b)

**\*Max. Penalty:**      Life Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

**Defendant's Name:  JUVING ALEXANDER SUAZO PERALTA**

**Case No:  11-20358-CR-UNGARO(s)**

Count #: 1

Conspiracy to Distribute Cocaine Knowing it Would be Imported into the United States

Title 21, United States Code, Section 963

**\*Max. Penalty:**      Life Imprisonment

Count #: 2

Conspiracy to Possess with Intent to Distribute Cocaine On Board a Vessel Subject to the
Jurisdiction of the United States

Title 46, United States Code, Section 70506(b)

**\*Max. Penalty:**      Life Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

CARLOS ARNOLDO LOBO
a/k/a "Negro"

CASE NUMBER: 11-20358-CR-
UNGARO(s)

AFFIDAVIT IN SUPPORT
OF REQUEST FOR
EXTRADITION

I, Karel Matyska, being duly sworn, depose, and state:

1.    I am a citizen of the United States.

2.    I am currently employed as a Special Agent with United States Homeland Security

       Investigations (HSI) and have been employed as such for approximately ten years.

3.    HSI is one of the agencies within the United States Government responsible for the

       enforcement of federal controlled substance laws.  As an agent with the HSI, I have

       personally conducted and participated in hundreds of investigations that have resulted in

       the arrests and convictions of people responsible for trafficking in illegal drugs.

4.    Based on my training and experience as an agent with the HSI, I am familiar with the

       means and methods that drug traffickers use to import illicit drugs, and I am familiar with

       the support and assistance that drug trafficking organizations require to conduct their illegal

       activities.  I have also become knowledgeable about the criminal statutes of the United

       States and the federal controlled substance statutes in particular.

5.    I am the lead agent assigned to the investigation of the drug trafficking activities of

       CARLOS ARNOLDO LOBO, alias Negro.  I am familiar with the evidence in the case.

       The facts set forth in this affidavit are based on my personal knowledge, information

1

supplied to me by other law enforcement personnel, and other sources of information. I am familiar with all aspects of this investigation, but have not set forth each and every fact about this investigation. The following is merely a summary of the evidence obtained during this investigation and does not refelect my entire knowledge of the investiation.

## SUMMARY OF THE EVIDENCE

6.   Beginning in approximately December of 2009, an investigation by U.S. law enforcement authorities revealed a large-scale maritime drug trafficking organization operating near La Ceiba, Honduras. Information received from confidential sources and law enforcement authorities indicated that CARLOS ARNOLDO LOBO is the owner and operator of several dozen vessels engaged in commercial fishing off the eastern coast of Honduras. These sources further indicated that LOBO outfitted these vessels to smuggle drugs and used the vessels to transport drugs, primarily cocaine, from Panama to Honduras then into Guatemala and beyond. LOBO was in partnership with drug cartels in Mexico and is responsible for delivering cocaine to these cartels for subsequent importation into the United States.

### August 3, 2010 Cocaine Seizure

7.   On August 3, 2010, while on routine patrol in international waters off the northeast coast of Honduras, the United States Coast Guard (USCG) observed a fishing vessel suspected of being involved in drug trafficking. This vessel was later identified as a Honduran-flagged vessel. The USCG lawfully received permission from Honduran authorities to board the vessel. After boarding, USCG discovered approximately 2,500 kilograms of cocaine. The five Honduran crew members were detained. Honduran authorities waived jurisdiction to the enforcement of United States law by the United States with regard to vessel and the

seizure of the cargo.  The five crew members were lawfully transported to Miami, Florida, for prosecution.

8.   The five crew members were charged with crimes by an indictment in the United States District Court for the Southern District of Florida.  All five defendants pleaded guilty to conspiring to possess with the intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States.  Members of the crew decided to cooperate with U.S. law enforcement authorities.  On August 23, 2010, one cooperating defendant (hereafter Cooperating Defendant 1) told law enforcement authorities that LOBO was responsible for the cocaine found on the Honduran fishing vessel.  Cooperating Defendant 1 subsequently identified a photograph of LOBO as the person directing the cocaine shipment.

9.   Cooperating Defendant 1 informed law enforcement authorities that he had known LOBO for many years and knew that LOBO had been involved in narcotics trafficking the entire time.  Cooperating Defendant 1 estimated that LOBO was responsible for two to three shipments per month and the cocaine came from Colombia and went to Guatemala or Mexico, but ultimately was destined for the United States.

**December 16, 2010 Cocaine Seizure**

10.   On December 16, 2010, while on routine patrol approximately 100 nautical miles north of Colon, Panama, the USCG interdicted a "go-fast" vessel with three crew members. Approximately 1,500 kilograms of cocaine was seized.  The go-fast vessel was without nationality and the three crew members were lawfully transported to Miami, Florida, for prosecution.

11.   The three crew members of the go-fast vessel were charged by indictment in the United States District Court for the Southern District of Florida.  All three crew members pleaded

3

guilty to conspiring to possess with the intent to distribute cocaine, while on board a vessel subject to the jurisdiction of the United States. The crew members, including Cooperating Defendant 2 and Cooperating Defendant 3 discussed below, decided to cooperate with law enforcement authorities.

12. Investigating law enforcement authorities learned from Cooperating Defendant 2 that the cocaine shipment seized on December 16, 2010, was under the direction of LOBO. Cooperating Defendant 2 admitted that he had participated in approximately eight narcotics shipments arranged by "Alex," an associate of LOBO.

13. Cooperating Defendant 2 stated that when he first began working for LOBO he was responsible for building hidden compartments in LOBO's vessels to hide narcotics. Cooperating Defendant 2 stated that in June or July 2010, LOBO and "Alex" recruited him to begin transporting drug shipments. Cooperating Defendant 2 told investigating law enforcement authorities that the December 16, 2010, drug shipment that was seized by the USCG was the second such drug trip he had made with Cooperating Defendant 3. Cooperating Defendant 2 admitted that on the first trip with Cooperating Defendant 3, in approximately August 2010, they delivered approximately 2,500 kilograms of cocaine to the Honduran fishing vessel that was interdicted on August 3, 2010. Cooperating Defendant 2 stated that before he departed on the August 2010 trip, he spoke directly to LOBO and was instructed by LOBO to travel near Gorda Cay by the Nicaragua/Honduras border where they were to rendezvous with the fishing vessel and offload the bales of cocaine from their go-fast vessel. Although the shipment was subsequently seized, Cooperating Defendant 2 indicated that LOBO paid him $5,000 in United States currency, rather than the $10,000 promised. Cooperating Defendant 2 identified a photograph of

4

LOBO as the person who gave him instructions to transport cocaine on go-fast vessels and paid him for his efforts.

14.  Investigating law enforcement authorities learned from Cooperating Defendant 3 that prior to being arrested following the seizure of the go-fast vessel on December 16, 2010, Cooperating Defendant 3 was approached by "Alex," an associate of LOBO, and was offered $40,000 in United States currency to captain a go-fast vessel from Panama to Honduras that would transport cocaine.  Cooperating Defendant 3 told investigating law enforcement authorities that he was operating under the direction of LOBO.  Cooperating Defendant 3 stated that he started working for LOBO after being recruited by "Alex" in January 2010, to deliver fuel to northbound go-fast vessels transporting cocaine for LOBO. Cooperating Defendant 3 admitted to making approximately eight delivery trips where he was paid between $5,000 and $8,000, in United States currency, per trip.  Cooperating Defendant 3 further admitted that he made two trips transporting cocaine for LOBO, one in August 2010, and the other in December 2010 (the same trip where he was arrested). Cooperating Defendant 3 identified a photograph of LOBO as the man for whom he had worked on the go-fast vessels.

### June 9, 2012 Cocaine Seizure

15.  On June 9, 2012, while on routine patrol approximately 83 nautical miles southwest of Cartagena, Colombia, the USCG interdicted a go-fast vessel with four crew members and what was determined to be approximately 500 kilograms of cocaine.  Because the go-fast vessel was without nationality, the vessel and its crew were subject to the jurisdiction of the United States.  The cocaine was seized and the four crew members were lawfully transported to Miami, Florida, for prosecution.

16.   The four crew members of the go-fast vessel were charged by indictment in the United States District Court for the Southern District of Florida.  All four crew members pleaded guilty to conspiring to possess with the intent to distribute cocaine, while on board a vessel subject to the jurisdiction of the United States.  The crew members, including Cooperating Defendant 4 discussed below, decided to cooperate with law enforcement authorities.

17.   Cooperating Defendant 4 told investigating law enforcement authorities that he was personally recruited to participate in the cocaine shipment interdicted on June 9, 2012, an associate of LOBO, Juving Alexander Suazo Peralta, who provided him the route and departure site for the cocaine shipment.  Cooperating Defendant 4 stated that he knew Suazo Peralta was employed by LOBO and that LOBO was the owner of the cocaine. Cooperating Defendant 4 added that he was to receive $100,000 dollars in United States currency for the trip and he was to compensate his crew from that amount.

### October 12, 2012 Cocaine Seizure

18.   On October 12, 2012, while on routine patrol approximately 60 nautical miles northeast of Bluefields, Nicaragua, the USCG interdicted a go-fast vessel with three crew members.  A lawful search of the go-fast vessel revealed what was later determined to be approximately 720 kilograms of cocaine.  Because the go-fast vessel was without nationality, the vessel and its crew were subject to the jurisdiction of the United States.  The cocaine was seized and the three crew members were lawfully transported to Miami, Florida, for prosecution.

19.   The three crew members of the go-fast vessel were charged by indictment in the United States District Court for the Southern District of Florida.  All three crew members pleaded guilty to conspiring to possess with the intent to distribute cocaine, while on board a vessel

6

subject to the jurisdiction of the United States. The crew members, including Cooperating Defendant 5 discussed below, decided to cooperate with law enforcement authorities.

20. Cooperating Defendant 5 told investigating law enforcement authorities that he was personally recruited by "Alex" to transport cocaine onboard a go-fast vessel and for that trip he would be paid $20,000 in United States currency. Cooperating Defendant 5 further explained that "Alex" works for a man named "Negro." Cooperating Defendant 5 identified a photograph of LOBO as the person who he knew as "Negro," as well as the man whom "Alex" worked for.

21. Cooperating Defendant 5 also stated that he was first recruited by "Alex" to move a cocaine shipment from Colombia to Honduras in April 2011. Cooperating Defendant 5 stated that on that occasion he departed from Colombia on a go-fast vessel with cocaine onboard, but was forced to return due to engine malfunctions. Cooperating Defendant 5 told investigators that he never completed that trip.

**Cocaine Packaging**

22. The packaging of the cocaine seized during the August 3, 2010, and December 16, 2010, interdictions bore easily identifiable logos, which U.S. law enforcement authorities know is a type of coding technique used by drug traffickers to ensure that their cocaine shipments can be easily tracked and recognized by the members of the criminal organization who are responsible for receiving the cocaine and forwarding it to the next destination along its route. The logo found on the cocaine shipment seized on August 3, 2010, matched the logo found on shipments of cocaine seized in the United States in September and October 2010, and the logos found on the cocaine shipment seized on December 16, 2010, matched logos found on shipments of cocaine seized in the United States in 2006 and again in October

2010. The discovery of these logos on shipments of cocaine seized in the United States, along with LOBO's history of making multi-thousand dollar payments to his associates in United States currency, led U.S. law enforcement authorities to conclude that the shipments of cocaine seized on August 3, 2010, and December 16, 2010, ultimately had been bound for the United States.

## IDENTIFICATION

23. CARLOS ARNOLDO LOBO, alias Negro, alias Arnaldo Lobo, is a Honduran citizen, born on May 28, 1974, in Honduras. He is described as a Hispanic male standing approximately 5 feet 10 inches in height, weighing approximately 175 pounds with brown hair and brown eyes.

24. Attached to my affidavit as **Attachment 1** is a photograph of CARLOS ARNOLDO LOBO. Cooperating Defendant 1, Cooperating Defendant 2, Cooperating Defendant 3, and Cooperating Defendant 5 have identified this photograph as being LOBO.

KAREL MATYSKA, SPECIAL AGENT
IMMIGRATION AND CUSTOMS ENFORCEMENT

Sworn and subscribed before me
this __31__ day of March, 2014

HON. JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

8